UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHAEL LAUER and WILLIAM NIX, on behalf of the INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND, *et al.*, <br>     Plaintiffs, <br> <br> v. <br> <br> FORTUNE COMPANIES, INC. and <br> SCOTT A. PITCHER, <br>     Defendants. | CAUSE NO.: 2:16-CV-429-JVB-JEM |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Partial Judgment on the Pleadings [DE 43], filed August 29, 2018, and Plaintiffs' Motion for Partial Summary Judgment [DE 53], filed December 7, 2018. Plaintiffs filed a response to the motion for partial summary judgment and Defendants filed a reply, both docketed at [DE 43].[1] Defendants filed a response to the motion for summary judgment on February 4, 2019, and Plaintiffs replied on March 8, 2019. For the reasons described herein, Defendants' motion is denied and Plaintiffs' motion for partial summary judgment is granted.

**BACKGROUND**

This is the second of two actions in which Plaintiffs, representing several pension and trust funds, seek to collect unpaid contributions arising from collective bargaining agreements with an employer, Fortune Management Inc. On July 25, 2012, Plaintiffs filed a complaint in this Court against Fortune Management and its president, Scott Pitcher. Plaintiffs initially sought to hold Pitcher personally liable for the unpaid contributions on common law and statutory claims of

---

[1] The motion was initially denied without prejudice pending a settlement conference, but was later revived. The Court ordered Defendants to re-file the motion and all supporting briefing in a single filing.

conversion. However, they abandoned the claims against Pitcher at the summary judgment stage. On May 14, 2015, the Court granted partial summary judgment to Plaintiffs and entered a judgment of $323,009.95[2] against Fortune Management only. The Court noted that Plaintiffs were "no longer pursuing" the conversion claims against Pitcher, and deemed the claims waived. During proceedings supplemental, Plaintiffs uncovered evidence that Pitcher was the "alter ego" of Fortune Management, and was directly liable for the unpaid contributions. Most notably, Plaintiffs claim that on October 1, 2020, less than three months after the original complaint was filed, Pitcher incorporated a new entity, Fortune Companies, Inc., and transferred the judgment debtor's assets to the new company to avoid collection. According to Plaintiffs, the judgment remains unpaid.

Plaintiffs have now filed a lawsuit against Pitcher and Fortune Companies, the new entity. They seek summary judgment on three counts: Count I, asking the Court to find that Pitcher is the alter ego of Fortune Management and impose individual liability on Pitcher; and Counts III and IV, asking the Court to find that Fortune Companies is liable for the prior judgment as an alter ego and successor entity of Fortune Management. Defendants move for judgment on the pleadings as to Counts I and II, the claims relating to Pitcher's liability, arguing that these claims were waived in the prior litigation and cannot be reasserted.

## ANALYSIS

### A.    Defendants' Motion for Partial Judgment on the Pleadings

Defendants seek judgment on the pleadings as to Counts I and II, the counts relating to Pitcher's individual liability, on the basis that they were abandoned and waived in the previous litigation. A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss under Rule 12(b); that is, the motion is granted if there are no material issues of fact and

---

[2] The Court later awarded $26,400.00 in attorneys' fees and costs to Plaintiffs, bringing the amount owed to $349,409.95.

"it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). In reviewing the motion, the Court is confined to the matters presented in the pleadings and considers those pleadings in the light most favorable to the movant. *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (discussing the standard under Rule 12(b)(6)).

Defendants first argue that Plaintiffs waived their claims by abandoning them at summary judgment during the previous action. Defendants cite to *Ienco v. Angarone*, 429 F.3d 680 (7th Cir. 2005) for the premise that a claim waived in one lawsuit cannot be revived in another lawsuit. In *Ienco*, the Seventh Circuit Court of Appeals found that a plaintiff who abandoned his Fourth Amendment claim at summary judgment in a previous case could not amend his complaint to add that claim in a new case. 429 F.3d at 684-85. This situation is different, because Plaintiffs seek to proceed on a different theory of relief. In the prior action, Plaintiffs abandoned of common law and statutory conversion; in this action, they are proceeding on claims of alter ego liability. Although there is factual overlap between the two, there is no indication that Plaintiffs waived or abandoned all claims arising from those facts. The Court's order in the prior case addressed the counts pled in that action, and there was no general finding that Plaintiffs had waived any other kind of claim against Pitcher. *See Lauer et al. v. Fortune Management Inc et al.*, 2:12-cv-291-APR, May 14, 2015 Order at 7 [DE 51]. Accordingly, the fact that Plaintiffs waived the claims in the prior case does not, by itself, preclude them from pursuing different claims in this case.

Defendants next argue that Plaintiff's claims are precluded by res judicata (also known as claim preclusion). Claim preclusion bars "parties or their privies from relitigating issues that were or could have been raised in" an action that has concluded with a final judgment on the merits. *Highway J Citizens Group & Waukesha County Envtl. Action League v. U.S. Dept. Of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). "Claim preclusion has three elements: (1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) (*citing U.S. ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009)). Claim preclusion therefore prevents a plaintiff from using "several theories of recovery as the basis for separate suits." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (quoting *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988)).

The third element – identity of the cause of action – is determined by using the "operative facts" or "same transaction" test; that is, a single cause of action consists of "a core of operative facts which give rise to a remedy." *Alvear-Velez*, 540 F.3d at 677 (citing *In re Matter of Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987)). Therefore, when "one group of facts [gives] rise to different claims for relief upon different theories of recovery, there remains a single cause of action." *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 335 (7th Cir. 1992) (quoting *Smith v. City of Chicago*, 820 F.2d 916 (7th Cir. 1987)).

Plaintiffs concede identity of parties, and that there was a judgment on the merits, but argue that these cases are not based on the same operative facts. In brief, the 2012 complaint alleged that Pitcher, as the president of Fortune Management, was obligated to pass on money taken from employee paychecks to the Union. Fortune Management failed to pay because Pitcher "knowingly and intentionally exert[ed]" control over the Union's money, and therefore Pitcher was personally

4

liable for the failure to pay based on theories of conversion. *See* Defs.' Mot. Ex. 1 [DE 43] at 26-27.[3] The present Complaint alleges that Pitcher so "manipulated" and "controlled" Fortune Management – based on the failure to pay Plaintiffs and the Fortune Companies transfer – that he is Fortune Management's alter ego and therefore personally liable for the failure to pay. Compl. at 8-9. The most significant addition is the allegation that Pitcher created Fortune Companies to avoid paying the judgment from the 2012 case. Plaintiffs state that the incorporation of Fortune Companies occurred shortly after the 2012 complaint was filed[4], and was only discovered during proceedings supplemental.

Fundamentally, the 2012 complaint alleges that an agent of the company stole money; the present Complaint alleges that he took control of the company itself. Although the complaints arise from the same general dispute, they do not share a common "core of operative facts." *Cf. Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995) ("Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations."); *see also Andersen v. Chrysler Corp.*, 99 F.3d 846, 852-53 (7th Cir. 1996) ("[O]ur cases have emphasized that, to ensure fair notice to litigants and to yield predictable results, courts should examine the 'facts' of a case at a sufficient level of specificity."). Moreover, the conduct primarily addressed in Counts I and II, the Fortune Companies deal, occurred after the first complaint was filed. Res judicata does not apply to claims based on facts arising after the first complaint. *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based on claims that accrue after a previous suit was filed."); *Doe v. Allied-Signal, Inc.*, 985 F.2d

---

[3] On a motion for judgment on the pleadings, the Court can consider "documents incorporated by reference to the pleadings." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

[4] The complaint was filed on July 25, 2012, while Fortune Companies was allegedly incorporated on October 1, 2012.

908, 914 (7th Cir. 1993) ("If the plaintiff is unaware of facts when filing a complaint, res judicata will not bar subsequent litigation.").

Defendants argue that Plaintiffs should have raised these new claims in the previous action. Defendants cite a June 30, 2014 status report filed by Plaintiffs in the 2012 action, indicating that Plaintiffs considered adding alter ego claims against Pitcher, but declined to do so after Defendants produced "documentation that dissuaded Plaintiffs from pursuing" those claims. See Reply Ex. 1 [DE 43] at 105-06. However, a plaintiff is not obliged to amend the original complaint to avoid claim preclusion. *Smith*, 513 F.3d at 783 ("It is true that some of the alleged harassment that occurred after the plaintiff filed her first suit occurred . . . . [But] there is no legal duty to amend rather than bring a fresh suit."). That is particularly so in this case, since Plaintiffs claim – and Defendants do not dispute – that Plaintiffs did not learn about the Fortune Companies deal until after judgment had been entered in the first case. Defendants have not shown why these facts should have been raised and litigated in the prior action. *See Indiana Carpenters Pension Fund v. Hammond*, No. 118-CV-03176-MPB-RLY, 2019 WL 9093756, at *9 (S.D. Ind. Apr. 23, 2019) (finding that claim preclusion did not bar alter-ego claims where "it was not until the proceedings supplemental and subsequent investigation were conducted that they discovered the [relevant] facts").

For the same reasons, Defendants' issue preclusion argument also fails. Issue preclusion occurs when (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue was actually litigated in the prior litigation; (3) the determination of the issue was essential to the final judgment; and (4) the party hurt by the preclusion was fully represented in the prior action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Although Pitcher's liability for conversion based on misappropriation of the money has been litigated, the

6

claim that he is the alter ego of the employer has not been litigated. "[I]ssues are not identical if the second action involves application of a different legal standard." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (citations omitted). Accordingly, Counts I and II of the current action can proceed.

**B.     Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs seek summary judgment on Counts I, III and IV. Plaintiffs claim that Pitcher is an "alter ego" of Fortune Management (Count I), Fortune Companies is an alter ego of Fortune Management (Count III), and Fortune Companies is the "successor" entity of Fortune Management (Count IV).

**1.     Summary judgment standard**

Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted). To demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of

that party. *Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *Liberty Lobby*, 477 U.S. at 249-50.

### 2. Material facts

The following material facts are not in dispute: In July 2012, Plaintiffs sued Fortune Management, a construction, design, and property management company, and Scott Pitcher, its president, for failing to make required payments to employee benefit funds. However, Fortune Management was insolvent, and ceased operations in October or November 2012. Pls.' Mot. Ex. C, Deposition of Scott A. Pitcher ("Pitcher Dep."), [DE 55-3] at 18:16-22, 59:12-60:4.

While the litigation was ongoing, Pitcher arranged to create a separate entity, Fortune Companies, Inc., which was incorporated on October 1, 2012. *Id*. at 21:22-25. Pitcher was the president of both companies, and performed the same roles – buying, selling and designing property, and acting as the "field guy" – for both companies. *Id.* at 31:7-12, 57:17-58:6. On October 3, 2012, Plaintiffs completed an audit of Fortune Management, and on October 25, 2012, they delivered the results of the audit to Fortune Management, laying out its estimated liability. Mot. Ex. F, Affidavit of Thomas E. Moss [DE 55-6], ¶ 6. On November 1, 2012, Fortune Management began selling assets to Fortune Companies. Pitcher Dep. at 40:10-42:9. Between November 2012 and January 2013, Fortune Management, through Pitcher, sold the bulk of its assets to Fortune Companies, including vehicles, office equipment, and other supplies. *Id*. at 40:10-47:1; 57:4-12; Mot. Ex. D, Exs. 16-17 to Pitcher Dep. [DE 55-4] at 311-12.

Once created, Fortune Companies engaged in the same business as Fortune Management did. Pitcher Dep. at 22:8-19; 30:22-31:4. The companies have the same address and rent from the

same landlord (another Pitcher-owned company). *Id*. at 18:4-15; 22:20-22; 31:13-15, 56:3-17. Fortune Companies uses many of the same employees as Fortune Management, *id*. at 33:8-34-9, and services many of the same clients. *Id*. at 34:13-36:21. Fortune Companies also claims ownership and credit for projects completed by Fortune Management. *Id*. at 97:18-99:24.

Plaintiffs eventually secured a judgment and subsequent orders against Fortune Management amounting to $349,409.95 in total. *See* Mot. Ex. A [DE 55-1]. During proceedings supplemental, Plaintiffs discovered the existence of Fortune Companies and the fact that most of Fortune Management's assets had been transferred to Fortune Companies.

### 3. Successor liability claim (Count IV)

Defendants seek to impose liability on Fortune Companies as a successor entity to Fortune Management. If one business purchases another, successor liability can attach if the purchasing business was on notice of the claim of liability and there is substantial continuity in the operations of the business. *See Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 845 (7th Cir. 2015); *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir.1998) ("[S]uccessor entities can be liable for multiemployer pension contributions if (1) there is sufficient continuity between the two companies and (2) the successor company had notice of the predecessor's liability."). In assessing whether there is substantial continuity between the businesses, the Court considers factors such as ownership, physical assets, intangible assets, management and workforce, business services, and customers. *Indiana Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.*, 884 F.3d 770, 778 (7th Cir. 2018).

It is undisputed that Fortune Companies has the same business purpose as Fortune Management, maintains the same address, is supervised by the same president (Pitcher), uses much of the same equipment, and has many of the same clients and employees. Although Defendants

dispute Plaintiffs' contention that Fortune Companies uses Fortune Management's "goodwill, name, [and] webpage," they do not dispute that Fortune Companies claims ownership and credit for projects completed by Fortune Management.

Defendants do not directly contest substantial continuity, but instead argue that Fortune Companies did not have adequate notice of liability because "the precise amount of Plaintiffs' claim was not known to Fortune Companies when it was formed." However, all that is required is "notice of the claim," not an exact accounting of the amount owed. *Sullivan v. Running Waters Irrigation, Inc.,* 739 F.3d 354, 357 (7th Cir. 2014). To the extent Defendants argue that Fortune Companies did not have notice of the claim pending against Fortune Management, they have failed to raise a question of material fact on that issue, given that Pitcher, its president, was served with the original complaint. *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990) ("[N]otice can be proven not only by pointing to facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances."). Accordingly, summary judgment for Plaintiffs on Count IV is appropriate.

    **4.**    **Alter ego liability claims (Counts I and III)**

Plaintiffs argue that Pitcher (Count I) and Fortune Companies (Count III) should be held liable as alter egos of Fortune Management. Liability can attach to a person or entity that was not a party to a collective bargaining agreement if the non-party is an alter ego of the signatory. *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 789 (7th Cir. 1993); *see also Indiana Carpenters*, 2019 WL 9093756, at *8-9 (discussing alter ego liability for individuals). The alter ego determination "focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the

obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Int'l Union of Operating Eng'rs, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987). Relevant factors include whether the companies have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Int'l Union of Operating Engineers, Local 150, AFL–CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998). For the alter ego doctrine to apply, the employer must show "unlawful motive or intent," as measured by "1) the amount of respect given to the separate identity of the corporation by its shareholders; 2) the fraudulent intent of the incorporators; and 3) the degree of injustice visited on the litigants by respecting the corporate entity." *Bd. of Trustees of Plumbers & Pipefitters Local No. 172 Welfare Fund v. Matrix Plumbing & Heating, Inc.*, No. 2:09-CV-414-TLS, 2012 WL 1066758, at *4 (N.D. Ind. Mar. 28, 2012) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp.*, 85 F.3d 1282, 1287 (7th Cir.1996)).

For the reasons described above, Plaintiffs have shown that there is sufficient continuity between the Fortune entities. The only issue remaining is whether Plaintiffs have shown that Defendants acted with "unlawful motive or intent" to avoid their obligations under the collective bargaining agreement. In this case, the most telling factor is the timeline of events leading to the asset sales. *See Matrix Plumbing*, 2012 WL 1066758 at *6 ("More important, however, to the Court's finding of fraudulent intent is the undisputed time line of events leading up to the asset transfer, the factual context surrounding the transfer, and the continued operations of Matrix's business after the transfer."). Plaintiffs' original complaint was filed on July 25, 2012, putting Pitcher and Fortune Management on notice (if they were not already) about the potential liability.[5]

---

[5] As with Plaintiffs' successor liability claim, Defendants argue that they were not aware of the exact figure of liability until after the incorporation and asset sale. However, Plaintiffs only need to show "an attempt to avoid the obligations of a collective bargaining agreement." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1288 (7th Cir. 1996).

On October 25, 2012, Plaintiffs delivered the results of its audit to Fortune Management, laying out its estimated liability. On November 1, 2012, Fortune Management, through Pitcher, made its first sale of assets to Fortune Companies. While Fortune Management was never formally "wound up," the bulk of its assets were sold to Fortune Companies by January 2013. Although Defendants claim these transactions were purely a reaction to Fortune Management's insolvency stemming from the 2009 economic crisis, the timeline strongly supports the conclusion that Pitcher moved the company's assets in part so they could be safe from judgment. *See McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 904 (7th Cir. 2018) (reversing summary judgment for employer on alter ego liability where a new, similar company was formed within three weeks of a magistrate judge's recommended judgment); *Matrix Plumbing & Heating*, 2012 WL 1066758 at *6 (asset transfer and incorporation of new company completed roughly six weeks after entry of judgment); *Trustees of NECA-IBEW Pension Ben. Tr. Fund v. Springman*, No. 07-CV-0600-MJR, 2009 WL 1089549, at *6 (S.D. Ill. Apr. 22, 2009) (new corporation established eight days after ERISA lawsuit was threatened).

The Court considers two other factors: whether Defendants themselves respected the separate identity of the corporation, and the injustice to Plaintiffs if the corporate form is respected. The continuity of the businesses strongly supports a finding of lack of respect for the companies' secret identities. *See Cent. Transp.*, 85 F.3d at 1288 ("The extent of the interrelationship among the . . . defendants suggests a lack of respect for the separate identity of the corporations"); *Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc*., No. 95 C 4809, 1999 WL 47078, at *5-6 (N.D. Ill. Jan. 20, 1999) ("[I]llustrative factors commonly include common management, business purpose, operations, equipment, employees, and supervision as well as the commingling of assets and common ownership.") (listing cases). Further, Pitcher paid for many of

Fortune Management's assets from his own funds, Pitcher Dep. at 47:15-49:21, and could not identify whether these payments made from his account were his own money or "investment money" gathered and stored in his account. *Id.* at 49:22-50:25. The assets were apparently sold piece-meal through individual bills of sale, without an asset purchase agreement between the two Fortune entities. No consideration was paid for Fortune Management's name and goodwill, but Fortune Companies claimed credit for projects completed by Fortune Management since 1985. *Id.*, 56:17-57:3, 98:22-99:24. Neither company held directors' meetings, and Pitcher could not confirm whether there were shareholder meetings. *Id.*, 65:2-15 ("I met with my accountants and that type of thing. I don't know if it was construed as a shareholder meeting."). The absence of these formalities, particularly the commingling of assets without documentation, also supports an alter ego finding. *See Matrix Plumbing*, 2012 WL 1066758 at \*5; *Ceiling Wall Sys.*, 1999 WL 47078 at \*6-7.

The last factor for the Court to consider is whether respecting the corporate form of Fortune Companies would create injustice to Plaintiffs. The injustice here would be considerable, because it would hinder Plaintiffs from collecting their judgment against Fortune Management – from assets that Fortune Management held until shortly after receiving the results of an audit indicating those assets would be at risk. *See Ceiling Wall Sys.*, 1999 WL 47078, at \*8 ("[T]he fraud or injustice courts seek to undo is the deprivation of earned benefits to eligible employees as well as the unjust enrichment of corporations seeking to avoid their collectively bargained-for obligations.").

Having considered the relevant factors, the Court finds that Defendants have not raised an issue of material fact as to Pitcher's liability under an alter ego theory, or the liability of Fortune

Companies under alter ego or successor liability theories. Accordingly, Plaintiffs' motion for partial summary judgment is granted.

## CONCLUSION

For the reasons described above, the Court hereby **DENIES** Defendants' Motion for Partial Judgment on the Pleadings [DE 43], and **GRANTS** Plaintiffs' Motion for Partial Summary Judgment [DE 53]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Plaintiffs as to Counts I, III, and IV. The Court **ORDERS** the parties to file a joint status report, addressing the status of this case as to the remaining counts, by **November 20, 2020**.

SO ORDERED on October 29, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
